UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NANCY LACKUPS, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05CV1012  (JCH) |
| WILBUR CHAPMAN, | : | |
| LYNN KERWIN, | : | |
|     Defendants | : | FEBRUARY 12, 2007 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 23]**

**I.    INTRODUCTION**

The plaintiff, Nancy Lackups, brings this action against the defendants, Wilbur Chapman and Lynn Kerwin, in their individual capacities.  In her Complaint [Doc. No. 1], Lacksups alleges, pursuant to section 1983 of Title 42 of the United States Code, that the defendants violated her right to Equal Protection under the Fourteenth Amendment. The defendants have moved for summary judgment on all of Lackups' claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**II.    STANDARD OF REVIEW**

In a motion for summary judgment, the burden lies on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); SCS Communications, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004).  The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support

1

the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted); accord Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (internal quotation marks and citation omitted). A dispute regarding a material fact is genuine, "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992)). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523 (internal citation omitted). Thus, "'[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper.'" Id. (quoting Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991)); see also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992) ("Viewing the evidence in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is inappropriate."). "'If, as to the issue on which

summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)).

When a motion for summary judgment is supported by sworn affidavits or other documentary evidence permitted by Rule 56, the nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading." Fed. R. Civ. P. 56(e); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, "the [nonmoving] party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment. Id. "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). Similarly, a party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## III.  FACTUAL BACKGROUND[1]

Nancy Lackups, a Caucasian female, was a lieutenant in the Bridgeport, CT,

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support her allegations.

3

Police Department for twenty-one years before retiring in August 2004.  See Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s Stat.") at ¶ 1 [Doc. No. 23].  Wilbur Chapman, an African-American male, was the Chief of Police at all relevant times, although he has since retired.  Id. at ¶ 2.  Lynn Kerwin, a Caucasian female, is a captain in the Police Department, having risen through the ranks since joining the Department in May 1985.  Id. at ¶ 3.

In 1998, former Police Officer Garfield Burns filed a complaint against Lackups, who was then a supervisory sergeant, alleging harassment of him and other African-American officers based on their race.  Id. at ¶¶ 4-5  In late 2000, Kerwin, who was then a lieutenant in the Department's Office of Internal Affairs ("OIA"), was assigned to investigate the charges brought by Officer Burns.  Id. at ¶ 4.  Among other claims of harassment and discriminatory treatment, Burns claimed that he was transferred, in violation of the "Remedy Order,"[2] to the West Side Precinct in January 1999 due to his conflict with Lackups, and that it was easier to transfer a patrol officer than a supervisor.  Id. at ¶ 5(f).  Kerwin's investigation involved interviewing witnesses and resulted in a report, dated May 1, 2001, that concluded that there was no merit to Burns' specific allegations of racial discrimination.  Id. at ¶ 6-7.  However, the report also stated that Lackups' micro-management style of supervision contributed to a disproportionate number of complaints from her subordinates as compared to other supervisors in the Police Department.  Id. at ¶ 8.  Kerwin's report, which was sent to Chief Chapman, concluded that Lackups appeared to formally recommend discipline for minority

---

[2]The "Remedy Order" is unexplained by the defendants; however, it appears to govern transfers, rotations, and geographical designations of police officers.  See Def.'s Stat. at Ex. D.

4

subordinates and not for non-minority subordinates, and that this "use of selective enforcement relative to disciplinary issues could readily be perceived as unfair treatment towards African American officers referenced in the OIA report." Id. at ¶ 8.

Chief Chapman reviewed the report and subsequently brought departmental charges against Lackups for failure to supervise in an appropriate and productive manner. Id. at ¶ 11-12. Lackups was not charged with violating any rule or policy prohibiting racial discrimination. Id. at ¶ 13. Pursuant to a federal court-established hearing process for matters involving complaints and charges against officers that could lead to an excess of 15 days suspension, Chief Chapman forwarded the matter to hearing officer James Stewart. Id. at ¶¶ 14-16. Stewart held a hearing on the matter on August 15, 2001, and October 3, 2001, and rendered a decision on November 28, 2001. Id. at ¶ 18. Both sides were represented by counsel at these hearings. Id.

Stewart agreed with the findings in the OIA report regarding both the lack of discrimination and the departmental violations, and thus imposed a 30-day suspension, which he subsequently reduced to 25 days. Id. at ¶ 19. Lackups agrees that she has no evidence of ex parte communications between Chapman and Stewart. See Plf.'s Loc.R.Civ.P. 56(a)2 Statement ("Plf.'s Stat.") at ¶ 21 [Doc. No. 26]. Lackups appealed Stewart's findings and discipline to arbitrator Thomas Staley, who ruled that there was not just cause to impose a 25-day suspension. See Def.'s Stat. at ¶ 24.

In or around June 2001, Kerwin became captain of the detective bureau, and began supervising Lackups in September 2001 after Lackups became a supervisory lieutenant in that bureau. Id. at ¶ 27. According to the defendants, after several

5

months, Kerwin had some concerns about Lackups' supervisory and management skills.³ Id. at ¶ 28 (citing concerns). Lackups was asked to transfer out of the detective bureau, and Kerwin sent a memorandum to Chief Chapman on December 11, 2002, outlining her concerns and recommendation to transfer Lackups. Id. at ¶¶ 31-32, Ex. K, 12/11/02 Memo from Kerwin to Chapman.⁴ Although Lackups had a right to contest the transfer, she did not do so. Id. at ¶ 37.

After the transfer recommendation, Lackups went out on sick and injury leave and worked only sporadically before retiring from the Police Department in August 2004. Id. at ¶ 39. Lackups filed this lawsuit to allege that the defendants discriminated against her by issuing the suspension and later transferring her, among other equal protection allegations. Id. at ¶ 38.

## IV. DISCUSSION

The defendants challenge Lackups' equal protection claim both because it is time-barred and because it fails on the merits. Regarding the statute of limitations issue, the court agrees with the defendants' characterization of Lackups' complaint as "somewhat confusing with respect to the allegations raised." See Def.'s Memorandum in Support of Summary Judgment ("Mem. in Supp.") at 21 [Doc. No. 23]. However, the

---

³The plaintiff disagrees and states that Kerwin instead wanted her out of her position because "(a) the plaintiff was a white supervisor and there were no minority supervisors and (b) defendant Kerwin had a friend with less seniority than the plaintiff to whom she wanted to give the plaintiff's job." See Plf.'s Stat. at ¶ 28.

⁴Although the plaintiff's Local Rule 56(a)2 Statement disagrees with the defendants' ¶ 31–which asserts that Lackups was offered, but refused, two different positions in the Department–the evidence to which it cites indicates that the plaintiff was asked to transfer voluntarily. See Plf.'s Stat. at Lackups Dep. at 75.

6

court decides that it need not reach the limitations question, because it finds that Lackups' equal protection claim, even if timely, fails on the merits.[5]

In order to establish Lackups' equal protection violation, she must prove that, "(1) in comparison with others similarly situated, she was selectively treated, and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)). In this case, Lackups claims a race-based equal protection violation. Defendants argue that she fails on both prongs: there is no one similarly situated to her, and there is no evidence of differential treatment based on her race.

The first prong requires Lackups to come forward with evidence that similarly situated employees were treated differently from her. Whether individuals are similarly situated is generally "a factual issue that should be submitted to the jury . . . This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." Harlen Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

The court finds that Lackups fails to create a material issue of fact on the first

---

[5]The court notes that Lackups' response to the defendants' statute of limitations argument, limited to two sentences in footnote 2 of her Memorandum in Opposition to Summary Judgment ("Mem. in Opp.") at 6, miscites the caselaw as it relates to 42 U.S.C. § 1983, which does not require that plaintiffs first exhaust state judicial or administrative remedies before filing federal § 1983 suits. See Patsy v. Board of Regents of State of Fla., 457 U.S. 496, 516 (1982) (holding that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983").

prong of the selective treatment test because she has not come forward with evidence that similarly situated Police Department employees were treated differently from her. In fact, Lackups' Memorandum in Opposition does not make any comparisons. Moreover, to the extent her claims are based on allegations that the defendants "acted jointly to force the plaintiff (a white female Lieutenant) out of her position as an active front-line supervisor within the department," see Plf.'s Mem. in Opp. at 1, Lackups has presented no evidence of any other lieutenant in the detective bureau and in fact stated she had "no knowledge" of how the other two (white male) lieutenants in the detective bureau were treated or regarded. See Plf.'s Stat. at ¶ 40; Def.'s Stat. at ¶ 40. According to the defendants, no complaints were filed against the other two lieutenants, and Kerwin, as their supervisor, was satisfied with their supervisory skills. See Def.'s Stat. at ¶¶ 40-41. Thus, the court finds that Lackups has not presented evidence that would create an issue of fact on the similarly situated prong.[6]

---

[6]Even if the court were somehow to assume that Lackups satisfied this first prong, the court still finds that she cannot satisfy the second prong for she has presented no evidence that would create a material issue of fact as to whether any alleged differential treatment was based on her race, which is Caucasian. Lackups argues that "[a] jury would be entitled to find in this case that a minority police chief, seeking to curry favor with minority officers, knowingly inflicted injury upon a white female supervisor officer upon the basis of allegations by minority officers which he knew to be false – and, in doing that, was knowingly assisted by a Captain unwilling to say no to him. That is sufficient to establish intentional discrimination on the basis of race." See Plf.'s Mem. in Opp. at 12-13. The plaintiff cannot make such a conclusory statement without supporting evidence, and Lackups in fact admitted in her deposition that Kerwin's alleged discrimination against her was "regardless of race . . . because she was white and I was white." See Def.'s Stat. at Ex. A, Lackups Dep. at 91. Moreover, there is no evidence that Chapman brought charges against Lackups because she was white; rather, the charges indicate allegations of departmental violations which were based on an investigation conducted by Kerwin pursuant to a complaint by one of Lackups' subordinates. Additionally, the 25-day suspension that was initially imposed on Lackups was issued by an independent hearing officer. The fact that Lackups was replaced by a white male appears to counter any inference of discrimination based upon race. See Def.'s Stat. at ¶ 43.

8

Given that Lackups has not come forward with evidence to create a material issue of fact on her equal protection claim, the court grants summary judgment to the defendants. This is a case where the court can grant summary judgment because it is clear no reasonable jury could find the similarly situated prong met. <u>Harlen Assocs.</u>, 273 F.3d at 499.

**V. CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment [**Doc. No. 23**] is GRANTED. The clerk is ordered to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 12th day of February, 2007.

                                         /s/ Janet C. Hall
                                         Janet C. Hall
                                         United States District Judge